O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KASEMAN,<br><br>              Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Case No. SACV 15-922-KK<br><br><br>MEMORANDUM & ORDER |

Plaintiff Gary Kaseman ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to Title 28 of the United States Code, section 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

1

# I.

## PROCEDURAL HISTORY

On October 19, 2011[1], Plaintiff filed an application for DIB alleging a disability onset date of May 20, 2005. ECF Docket No. ("Dkt.") 17, Administrative Record ("AR") at 229. Plaintiff's applications were denied initially on July 23, 2011, and upon reconsideration on October 5, 2012. Id. at 14, 102.

On October 30, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 109. On August 13, 2013, the assigned ALJ held a hearing at which Plaintiff appeared with counsel and testified. Id. at 46. A medical expert testified regarding Plaintiff's mental impairments and a vocational expert ("VE") also testified at the hearing. Id.

On December 13, 2013, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 20. On January 2, 2014, Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's decision. Id. at 8. On May 18, 2015, the Appeals Council denied Plaintiff's request for review. Id. at 1.

On June 10, 2015, Plaintiff filed the instant action. Dkt. 1, Compl. This matter is before the Court on the parties' Joint Stipulation, filed February 5, 2016, which the Court has taken under submission without oral argument. See JS.

# II.

## PLAINTIFF'S BACKGROUND

Plaintiff was born on December 3, 1958, and his alleged disability onset date is May 20, 2005. AR at 229. He was forty-six years old on the alleged disability onset date and fifty-four years old at the time of the hearing before the ALJ. Id. Plaintiff has a high

---

[1] The DIB application states the DIB application was completed on October 19, 2011. AR at 229. However, the ALJ and parties state the DIB application was filed on July 6, 2011. Id. at 14; Dkt. 18, Joint Stipulation ("JS") at 2. The parties do not raise the DIB application's filing date and the issue is not relevant to the claims presented. Thus, the Court declines to address it.

2

school diploma and prior work history as a construction carpenter. Id. at 52, 76, 312-13. Plaintiff alleges disability based on a brain injury, mobility impairments, nerve damage, and pain in his legs, back, hips, knees, right ankle, and neck. Id. at 311.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]

(4) Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.   STEP ONE**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity during the period from his alleged onset date of May 20, 2005 through his date of last insured of March 31, 2007." AR at 16.

**B.   STEP TWO**

At step two, the ALJ found Plaintiff had "the following severe impairments: history of traumatic brain injury and back and hip strain status post fall; cognitive disorder; mood disorder with anxiety and depressive features; and history of polysubstance abuse." <u>Id.</u>

**C.   STEP THREE**

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart R, Appendix 1." <u>Id.</u> at 17.

**D.     RFC DETERMINATION**

The ALJ found Plaintiff had the RFC to perform the following:

> lift or carry ten pounds occasionally and frequently; sit for six hours and stand or walk for two hours in an eight-hour work day but must be able to alternate sitting and standing every one to two hours; only occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous, moving machinery; can understand and remember simple, routine tasks, carry out simple and short instructions, and make judgments and decisions consistent with simple, routine duties; cannot perform work with high production quotas or rapid assembly line work; can have only minimal contact with the public, occasional contact with co-workers, and occasional contact with supervisors; cannot be responsible for the safety of others; and cannot perform inherently stressful jobs, such as handling customer complaints or safety officer work.

Id. at 19.

**E.     STEP FOUR**

At step four, the ALJ found Plaintiff "was unable to perform any past relevant work." Id. at 28.

**F.     STEP FIVE**

At step five, the ALJ found Plaintiff could "perform the requirements of representative occupations such as the following: bagger, garment and laundry[;] . . . assembler, plastic hospital parts[;] . . . [and] cleaner." Id. at 29.  Accordingly, the ALJ found Plaintiff "was not under a disability, as defined in the Social Security Act, from May 20, 2005, the alleged onset date, through March 31, 2007, the date last insured." Id. at 30.

///

///

# V.
# **PLAINTIFF'S CLAIMS**

Plaintiff presents eight disputed issues:

1. Whether the ALJ's RFC precludes the alternative occupations found by the ALJ.
2. Whether the ALJ properly considered an upper extremity limitation and should have called a medical expert.
3. Whether the ALJ committed legal error in assessing Plaintiff's testimony regarding his pain and limitations.
4. Whether the ALJ properly considered Dr. Lechuga's opinion.
5. Whether the ALJ properly considered Dr. Alban's opinion.
6. Whether the ALJ considered the results of nerve testing of Plaintiff's lower extremities.
7. Whether the ALJ properly considered Dr. Rath's opinion.
8. Whether the ALJ properly considered a urological limitation.

JS at 3. The Court finds the second issue dispositive solely with respect to the ALJ's consideration of Plaintiff's upper extremity impairments at step two, and thus declines to address the remaining issues. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

# VI.
# **STANDARD OF REVIEW**

Pursuant to Title 42 of the United States Code, section 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as

adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence" (citations and internal quotation marks omitted)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citation and internal quotation marks omitted).

## VII.
## RELEVANT FACTS

### A. MEDICAL RECORDS OF PLAINTIFF'S UPPER EXTREMITY IMPAIRMENTS

Medical records from May 20, 2005 through March 31, 2007, demonstrate Plaintiff had upper extremity impairments resulting from an accident that occurred on May 20, 2005. Plaintiff sought immediate medical care, and in a Consultation signed on May 26, 2005, Medical Doctor H. Richard Adams of Long Beach Memorial Center Hospital ("LBMCH") stated Plaintiff had fallen from a thirty-five foot height on May 20, 2005,

causing Plaintiff traumatic brain injury and muscle atrophy in his bilateral upper extremities. AR at 555. Dr. Adams stated he would "initiate rehabilitation, physical therapy, occupational therapy and speech therapy to evaluate and treat." Id. Subsequent records document Plaintiff's continuing upper extremity impairments and treatment through March 31, 2007 as follows:

- On June 25, 2005, Medical Doctor D. Michelle Thai of the St. Jude Medical Center ("SJMC") physically examined Plaintiff. Id. at 514-15. Dr. Thai stated Plaintiff was treated initially at LBMCH and sought further treatment at the SJMC emergency room on June 22, 2005. Id. at 514. Dr. Thai noted Plaintiff had "decreased sensation in the right upper . . . extremity." Id.
- On August 31, 2005, Medical Doctor and Clinical Professor of Neurology Kenneth L. Nudleman completed a Complex Consultation Report of Plaintiff. Id. at 535-41. Dr. Nudleman stated Plaintiff "note[d] numbness radiating into both upper extremities, left great than right" and had spasms to his arms. Id. at 536-37. Upon physically examining Plaintiff, Dr. Nudleman noted "paresthesias to both upper extremities," "a bilateral Tinel sign, left greater than right," and "fine finger movements were reduced bilaterally." Id. at 538. Dr. Nudleman recommended electromyogram and nerve conduction studies of Plaintiff's upper extremities. Id. at 539.
- On November 30, 2005, Dr. Nudleman performed a Bilateral Upper Extremity Electrodiagnostic Study of Plaintiff. Id. at 663-65. Dr. Nudleman noted "weakness to the upper extremities," abnormalities in Plaintiff's forearms, elbows, and wrists, and "a moderate bilateral entrapment of the median nerves at the carpal tunnel and a bilateral entrapment of the ulnar nerves at the wrist." Id. at 664.
- On December 15, 2005, Dr. Nudleman completed an Intermediate Consultation -- Treating Physician. Id. at 660. Dr. Nudleman stated Plaintiff "continue[d] to have tremors of the left hand, in particular." Id.

- On June 9, 2006, Dr. Adams completed a Complex/Comprehensive Physical Medicine and Rehabilitation Evaluation of Plaintiff. Id. at 610-21. Dr. Adams noted Plaintiff had "Positive Tinel's at the left antecubital fossa with production of tingling/needle sensations proximally and distally." Id. at 618. Dr. Adams diagnosed Plaintiff with paresthesias, weakness, intention tremors, and fatigue, and referred Plaintiff to an orthopedist "to evaluate for bilateral antecubital and carpal tunnel." Id. at 619.
- On June 24, 2006, Doctor of Philosophy, Psychologist, and Qualified Medical Evaluator in Psychology Paul Alan Dores completed an Initial Comprehensive Psychological Evaluation Including Report of Psychological Testing. Id. at 594-603. Dr. Dores diagnosed Plaintiff with "continuing complaints of right-sided numbness, left-sided spasms and both upper and lower extremity pains as reported by [Plaintiff]." Id. at 601.

**B.  PLAINTIFF'S TESTIMONY**

At the hearing on August 13, 2013, Plaintiff testified regarding the effect of his upper extremity impairments. Plaintiff's counsel asked Plaintiff, with respect to "2005 and March of 2007, . . . Any problems with your hands?" Id. at 68. Plaintiff answered, "My left arm." Id. Plaintiff also testified, "I couldn't carry a weight at all, because I couldn't even take a step with carrying a weight because the balance." Id. at 69.

**C.  VOCATIONAL EXPERT'S TESTIMONY**

At the hearing on August 15, 2013, the ALJ asked the VE about three hypothetical individuals. Id. at 76-80.

First, the ALJ described a hypothetical individual who had numerous physical and mental limitations, but had the ability to "[l]ift and carry 20 pounds occasionally and 10 pounds frequently." Id. at 76. When the ALJ asked whether the individual could do Plaintiff's past work, the VE answered "No." Id. at 77. When the ALJ asked whether the individual could do "any other work," the VE stated the individual could work as a garment and laundry bagger, assembler of plastic parts, and cleaner. Id. at 77-78.

Second, the ALJ described a hypothetical individual who had numerous physical and mental limitations, but had the ability to "lift and carry no more than ten pounds occasionally and frequently." Id. at 78-79. When the ALJ asked whether the individual could do Plaintiff's past work, the VE answered "No." Id. at 79. When the ALJ asked whether the individual could do "any other work," the VE stated the individual could work as a final assembler, "[a]ddresser," and stem mounter. Id.

Third, the ALJ described a hypothetical individual who had numerous physical and mental limitations, but again had the ability to "lift and carry no more than ten pounds occasionally and frequently." Id. at 80. The ALJ stated the individual could perform neither Plaintiff's past work nor any other "full-time employment." Id.

Plaintiff's counsel also questioned the VE. Id. Plaintiff's counsel described a hypothetical individual who had "only occasional use of the left upper extremity" and asked the VE if that limitation would impact the jobs she indicated. Id. The VE stated, "I believe if you cannot bilaterally use your hands at least frequently, you couldn't do sedentary work. So, no, there'd be no work." Id. at 80-81.

## D. THE ALJ'S STEP TWO FINDING

At step two, the ALJ acknowledged Plaintiff's upper extremity impairments, but found them to be non-severe. Id. at 17. The ALJ acknowledged medical records demonstrated Plaintiff had: (1) bilateral paresthesias in his upper extremities; (2) bilateral Tinel's signs in his upper extremities; (3) bilateral reduced fine finger movements; (4) decreased sensation in the right upper extremities; and (5) moderate bilateral entrapment of the median nerves at the carpal tunnel and of the ulnar nerves at the wrist and elbows. Id. at 17, 23. The ALJ also noted Plaintiff's treating chiropractor limited Plaintiff to "never reaching, handling, or fingering with the left upper extremity." Id. at 21, 27. In addition, the ALJ stated medical records demonstrated Plaintiff had "active range of motion of the upper extremities and full motor strength (although there was positive Tinel's signs and decreased sensation on the left)." Id. at 17 (parenthetical in original). The ALJ further noted, "the relevant medical opinions in the record (other than one from

10

a chiropractor) generally do not assess restrictions involving the upper extremities." Id. (parenthetical in original).

## VIII.
## DISCUSSION

### A. APPLICABLE LAW

An ALJ must consider the severity of a claimant's impairment or combination of impairments at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must find an impairment or combination of impairments severe if it more than minimally affects the claimant's physical ability to do basic work activities. 20 C.F.R. § 404.1521(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities include: lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(b)(1).

An ALJ must not exploit "[a]n overly stringent application of the severity requirement," Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), and "may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence," Webb, 433 F.3d at 687. Notably, the ALJ must fully and fairly develop the medical evidence to assure she considers the claimant's interests. Smolen, 80 F.3d at 1288. Ambiguous evidence "triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks omitted); see McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.").

### B. ANALYSIS

Here, the ALJ erroneously found Plaintiff's upper extremity impairments non-severe because Plaintiff's medical records and testimony establish a history of such impairments from May 20, 2005 to March 31, 2007.

First, contrary to the ALJ's claim that "the relevant medical opinions in the record (other than one from a chiropractor) generally do not assess restrictions involving the upper extremities," AR at 17, objective medical records demonstrate Plaintiff's upper extremity impairments during the relevant time period.  For example, throughout 2005, Dr. Nudleman, Plaintiff's treating physician, noted numbness, spasms, paresthesias, Tinel signs, tremors, abnormalities, bilateral entrapment, and reduced movements in Plaintiff's upper extremities.  Id. at 536-37, 539, 660, 664.  On June 25, 2005, Dr. Thai similarly noted Plaintiff had "decreased sensation in the right upper . . . extremity." Id. at 514.  On June 9, 2006, Dr. Adams diagnosed Plaintiff with paresthesias, weakness, intention tremors, and fatigue, noting tingling and needle sensations in Plaintiff's left antecubital fossa.  Id. at 618-19.  On June 24, 2006, Dr. Dores also diagnosed Plaintiff with "continuing complaints of right-sided numbness, left-sided spasms and both upper and lower extremity pains as reported by [Plaintiff]."  Id. at 601.

Second, Plaintiff testified as to the impact of his upper extremity impairments.[3]  Plaintiff testified he had problems with his left arm during "2005 and March of 2007" and stated, "I couldn't carry a weight at all."  Id. at 68-69.

Defendant argues Plaintiff's failure to seek treatment and medical records demonstrating Plaintiff's limitations arose after March 31, 2007 support the ALJ's finding.  JS at 14.  First, as previously discussed, medical records and Plaintiff's testimony demonstrate Plaintiff's upper extremity limitation began in May of 2005, well before March 31, 2007.  Moreover, the ALJ did not express such rationale.  Because the Court may review only the reasons stated by the ALJ in her decision "and may not affirm

---

[3]  Defendant argues the ALJ rejected Plaintiff's testimony as not credible.  See JS at 25-33.  This argument cannot save the ALJ's error at step two.  While "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions," there is "no inconsistency between [Plaintiff]'s complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two."  See Webb, 433 F.3d at 688 (citation omitted).

the ALJ on a ground upon which [s]he did not rely," Defendant's argument fails. See Orn, 495 F.3d at 630.

Defendant further argues the ALJ properly considered objective medical evidence, which demonstrated "Plaintiff had active and full range of motion of the upper extremities and full motor strength during the relevant period." JS at 14. However, in determining Plaintiff's RFC, the ALJ relied solely upon Dr. Adams' opinion regarding Plaintiff's range of motion and motor strength, while erroneously ignoring medical records documenting numbness, tremors, bilateral entrapment, and other abnormalities in Plaintiff's upper extremity limitations. See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (stating an ALJ must view a plaintiff's treatment records "in light of the overall diagnostic record"). By ignoring these medical records and assuming Plaintiff's documented impairments did not affect his range of motion and motor strength, the ALJ improperly substituted her own findings and opinions for that of medical experts. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (stating an ALJ who is "not qualified as a medical expert" should not make her "own exploration and assessment as to claimant's physical condition"); see also Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) (stating "[t]he ALJ may not substitute h[er] own lay[person]'s opinion for the findings and opinion of a physician"). To the extent the ALJ found medical records ambiguous on the issue of Plaintiff's range of motion and motor strength, the ALJ had a duty to "fully and fairly develop the medical evidence to assure [s]he consider[ed] the claimant's interests." See Smolen, 80 F.3d at 1288.

Therefore, the ALJ's reasoning exploited "[a]n overly stringent application of the severity requirement," see Corrao, 20 F.3d at 949, and the ALJ's conclusion that Plaintiff's upper extremity impairments were non-severe is not "clearly established by medical evidence," see Webb, 433 F.3d at 687.

///

///

**IX.**

## RELIEF

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation and internal quotation marks omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation and internal quotation marks omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

In this case, the record has not been fully developed. The ALJ must reassess Plaintiff's limitations and their impact on the disability determination. Accordingly, remand for further proceedings is appropriate. See Hill, 698 F.3d at 1162.

## X.

## ORDER

For the foregoing reasons, IT IS ORDERED judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: FEBRUARY 19, 2016

HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE